*Frank W. Volk*
Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA
# AT CHARLESTON

| | |
|---|---|
| IN RE:<br><br>BERNARD WEBB and<br>JUDY WEBB,<br><br>    Debtors. | CASE NO. 3:15-bk-30498<br><br>CHAPTER 7<br><br>JUDGE FRANK W. VOLK |
| BERNARD WEBB and<br>JUDY WEBB,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY NATIONAL BANK OF WEST VIRGINIA,<br><br>    Defendant. | A.P. No. 3:16-ap-03013 |

## MEMORANDUM OPINION AND ORDER

Pending are the Motion by Defendant City National Bank of West Virginia ("City National") to Dismiss Adversary Proceeding [Dckt. 29] and the Motion by Bernard Richard Webb and Judy Maye Webb for Summary Judgment [Dckt. 34].

**I.**

Defendant City National is a federally-chartered bank operating in many West Virginia counties. City National has its principal office in Charleston, West Virginia. Plaintiff-debtor Bernard R. Webb is a high school graduate residing in Wayne County, West Virginia. He is disabled. Plaintiff-debtor Judy M. Webb also graduated from Wayne High School. She is not employed outside the home.

The Court sets forth below the "Factual and Procedural Background" found in *Webb v. City National Bank of West Virginia, N.A.*, --- W. Va. ---, --- S.E.2d ---, 2017 WL 2210148 (2017), a case in the chain of litigation involving the parties:

> In 1995, City National provided petitioners with a mortgage loan secured by a deed of trust on petitioners' property in Wayne County, West Virginia. The loan matured in September of 2001, but still had an unpaid balance of $46,663.95. City National refinanced petitioners' loan in 2002, resulting in a new maturity date of March 1, 2017. Between approximately April of 2002 and April of 2013, petitioners made their monthly payments without issue. However, it was later discovered that when City National refinanced the loan in 2002, it mistakenly applied the entirety of petitioners' mortgage payments to their principal only. Consequently, petitioners paid no interest on their loan between approximately March of 2002 and April of 2013, at which point City National erroneously advised petitioners that their loan had been paid in full. City National executed, and petitioners accepted, a release on City National's lien for the collateral on the note.
>
> Following a convoluted series of events involving a separate vehicle loan, petitioners filed suit against City National in 2014. In relevant part, petitioners alleged that its mortgage loan had been paid off in June of 2012, and that City National converted petitioners' monthly mortgage payments from June of 2012 through April of 2013 by improperly applying those payments to an allegedly void judgment resulting from an unpaid vehicle loan. In June of 2015, City National filed a motion for summary judgment in which it asserted that petitioners owed $17,530.00 on the mortgage loan as of June 8, 2015, pursuant to the refinance agreement signed by the parties in 2002, and that it was entitled to judgment in that amount. The parties reached a settlement prior to the circuit court taking up City National's summary judgment motion and tendered an "Agreed Order of Dismissal" to the circuit court, which the circuit court entered on July 2, 2015. The one-sentence agreed order stated that the matter was dismissed without prejudice; it made no reference to the circuit court retaining jurisdiction over the enforcement of the settlement agreement.
>
> The parties signed a "Mutual Settlement Agreement and Release" [(MSAR)] on July 6, 2015. In relevant part, the settlement agreement stated that "[u]pon the return of an appraisal of the collateral in the amount in excess of [$17,530.00], [petitioners] will execute a new Promissory Note ... and a new Deed of Trust with the same collateral as secured the previous loan ...[.]" The settlement agreement further stated that "[t]he PARTIES warrant that they understand and agree that this . . . [MSAR] shall be enforceable in the Circuit Court of Wayne County in the same manner as if entered therein as a consent decree." Both parties were represented by counsel when executing the settlement agreement.
>
> On October 12, 2015, City National filed a motion in which it asked the

2

circuit court to (1) hold petitioners in contempt; (2) enforce the settlement agreement; and (3) award it fees and costs. City National alleged in its motion that petitioners had failed to comply with the settlement agreement because they refused to execute a new promissory note and deed of trust. Petitioners filed a motion to dismiss City National's motion, in which petitioners argued that the circuit court's jurisdiction over the underlying suit ended with the entry of the Agreed Order of Dismissal on July 2, 2015, and that City National was required to file a separate action to enforce the settlement agreement. City National filed a response to petitioners' motion to dismiss and contended the circuit court retained jurisdiction to enforce the settlement agreement by virtue of West Virginia law, as well as the language of the settlement agreement.

On November 2, 2015, the circuit court heard arguments on the respective motions. By order entered on November 24, 2015, the circuit court denied City National's request to hold petitioners in contempt because petitioners had not violated a court order. The circuit court also denied City National's request for fees and costs, ruling that petitioners' conduct was not "so severe and vexatious as to warrant such an award." However, the circuit court granted City National's motion to enforce the settlement agreement on the basis that the parties clearly and unambiguously conferred jurisdiction upon the circuit court to enforce the settlement agreement by including such language in the settlement agreement. Accordingly, the circuit court ordered that petitioners execute all documents required to effectuate the terms of the settlement agreement within two weeks.

On the same day that the circuit court entered its order granting the bank's motion to enforce the settlement agreement, petitioners filed a petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of West Virginia. Thereafter, on City National's motion, the Bankruptcy Court entered an order lifting the automatic stay for the purpose of allowing the circuit court to rule on the motion to enforce the settlement agreement. On June 28, 2016, the circuit court entered a "Judgment Order" in which it restated and reaffirmed its prior ruling set forth in its November 24, 2015, order. This appeal followed.

*Id.*, 2017 WL 2210148, at *1–2.[1]

The appeal terminated with entry of the mandate on the *Webb* opinion quoted immediately above. While the appeal was pending, and inasmuch as the Webbs continued in their refusal to comply with the "Judgment Order" directing them to execute a Promissory Note and

---

[1] As will become apparent, reference to the Supreme Court of Appeals' recitation is appropriate inasmuch as no party has contested any of the discussion found therein. (*See, e.g.*, Pls.' Resp. to Mot. to Dism. at 2 ("the decision of the West Virginia Supreme Court of Appeals clarifies and simplifies, but does not alter the facts as material[ly] relate to the . . . adversary complaint.")).

3

Deed of Trust, City National moved to compel their compliance with the circuit court's "Judgment Order," and a hearing was held on September 6, 2016. That same day, the circuit court granted City National's compliance request. On September 13, 2016, approximately ten months after the Webbs filed their bankruptcy petition and over two months after they converted to a Chapter 13 proceeding, they signed the Promissory Note and Deed of Trust.

On September 16, 2016, however, the Webbs instituted this adversary proceeding. In sum, they contend that the July 6, 2015, MSAR, and the September 13, 2016, Promissory Note and Deed of Trust signed pursuant thereto as directed by the circuit court, amount to consumer credit and residential mortgage transactions subject to the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667f and its implementing regulation, known as Regulation Z, 12 C.F.R. 1026 *et seq.*

They assert the following: (1) a claim for the failure to adequately disclose the credit terms and the Webb's putative right to rescind the transactions under TILA and Regulation Z (Count One), (2) the request for a declaration that the Webbs were entitled to rescind the July 6, 2015, and September 13, 2016, documents within three days "from the closing thereof" pursuant to TILA (Compl. ¶ 69) (Count Two), (3) the request for a declaration that City National engaged in the unlawful collection of a claim owed or due in violation of, *inter alia*, West Virginia Code § 46A-2-117 (prohibiting a consumer from authorizing any person to confess judgment on a claim arising out of a consumer loan) and § 46A-2-128 (using unfair or unconscionable means to collect a debt) (Count Three)[2], and (4) violation of the automatic stay by City National, culminating in the September 6, 2016, order resulting from its successful efforts in the circuit court to compel the

---

[2] The Webbs have abandoned Count Four, a contract claim, following the Supreme Court of Appeals' decision. The Court **ORDERS** that the motion to dismiss Count Four be, and hereby is, **GRANTED**.

Webbs to honor the promises made in the MSAR signed over a year earlier (Count Five).

## II.

### A.   Governing Standards

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled on other grounds*, *Twombly*, 550 U.S. at 562-63); *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015). Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 558. It is now settled that "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *McCleary-Evans*, 780 F.3d at 585; *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements." *Wright v. N. Carolina*, 787 F.3d 256, 270 (4th Cir. 2015); *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (internal quotation marks and citation omitted). Stated another way, the operative pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening

5

pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly* 550 U.S. at 570.

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief. . . .'"
>
> Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not "show[n]" -- "that the pleader is entitled to relief."
>
>    In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678-79 (citations omitted).

As noted in *Iqbal*, the Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "'accept as true all of the factual allegations contained in the complaint . . . .'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555); *see also South Carolina Dept. of Health and Environmental Control v. Commerce and Industry Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (quoting *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)). The court is additionally required to "draw[] all reasonable . . . inferences from those facts

6

in the plaintiff's favor . . . ." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

In those instances when res judicata is the ground upon which dismissal is sought, the Rule 12(b)(6) standard may morph a bit:

> Although an affirmative defense such as *res judicata* may be raised under Rule 12(b)(6) "only if it clearly appears on the face of the complaint," *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir.1993), when entertaining a motion to dismiss on the ground of *res judicata*, a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact, *see Day v. Moscow*, 955 F.2d 807, 811 (2d Cir.1992); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984); *Briggs v. Newberry County Sch. Dist.*, 838 F. Supp. 232, 234 (D.S.C.1992), *aff'd*, 989 F.2d 491 (4th Cir.1993) (unpublished).

*Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000); *see also Q Int'l Courier Inc. v. Smoak*, 441 F.3d 214, 216 (4th Cir. 2006); *Harrison v. Burford*, 2012 WL 2064499, at *3 (S.D. W. Va. 2012) ("In this case, the plaintiff has not disputed the factual accuracy of the record in the prior state court action. Accordingly, the court will take judicial notice of the prior proceeding.").

**B.     Analysis**

**1. Counts One Through Three**

A fundamental canon of West Virginia preclusion law is that a claim once prosecuted and later repeated may be barred if it was adjudicated, or could have been adjudicated, in the first proceeding. The Supreme Court of Appeals recognized this principle as recently as 2017, quoting this traditional formulation:

> Before the prosecution of a lawsuit may be barred on the basis of res judicata, three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in

7

the prior action.

*Cabot Oil & Gas Corporation v. Beaver Coal Co., Ltd*, 2017 WL 5192490, at *7 (2017) (quoting Syl. Pt. 4, *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W.Va. 469, 498 S.E.2d 41 (1997).

Regarding Counts One through Three, there was a final adjudication on the merits of the MSAR and its enforceability. On July 6, 2015, the MSAR was signed by the parties. When a controversy arose respecting its enforceability, City National moved to enforce the MSAR and the circuit court heard the matter. The circuit court enforced the accord, ordering the Webbs again to execute all documents required for effectuation. Additionally, the Supreme Court of Appeals' decision conclusively established that the circuit court was vested with jurisdiction over the parties' dispute concerning the MSAR.

Respecting the second element, it is undisputed that the adversary proceeding involves the identical parties to the circuit court litigation. The third element is likewise satisfied. The Webbs could have raised, or did raise, all of the challenges they now embody within the federal and state claims found in Counts One through Three. Although the Webbs attempt a technical dodge of this requirement by asserting they had no obligation to "plead" the claims found in Counts One through Three, and that they need not have raised them as defenses either, they were obliged to raise in the circuit court any and all matters in defense to enforcement of the MSAR. They utterly failed to do so, perhaps aware that the secreted arguments might later provide one more opportunity to delay their unquestionable obligations under the MSAR. That is not a result the Court will sanction. Consequently, the claims are barred by res judicata.[3]

---

[3] Moreover, the three claims would be barred on the additional grounds relied upon by City National. For example, respecting the federal claims found in Counts One and Two, the entry into the MSAR is not a residential mortgage transaction but the settlement of a civil action, with a later order by the circuit court compelling the Webbs' compliance. For that reason, the transaction

It is, accordingly, **ORDERED** that the motion to dismiss Count One, Count Two, and Count Three be, and hereby is, **GRANTED**.

### 2. Count Five

As noted in the May 4, 2016, Memorandum Opinion and Order lifting the stay, the MSAR obliged the Webbs to "sign a new promissory note and deed of trust." (Memo. Op. at 1). The Court additionally observed as follows respecting the circuit court litigation for which stay relief was sought: "City National seeks only to compel the Webbs to follow through with their putative settlement obligations." (*Id.* at 5). Respecting those settlement obligations, the September 13, 2016, order entered by the circuit court commanded the Webbs "to execute the Promissory Note and Deed of Trust" no later than September 13, 2016. (Def.'s Ex. 10 at 3).

Consequently, neither the September 6, 2016, circuit court order, nor the efforts of City National urging entry of such an order, give rise to a stay violation. City National sought, and the circuit court granted, the precise proceedings and remedy authorized by the May 4, 2016, Memorandum Opinion and Order.

It is, accordingly, **ORDERED** that the motion to dismiss Count Five be, and hereby is, **GRANTED**.

It is further **ORDERED** that the motion to dismiss be, and hereby is, **GRANTED** and the motion for summary judgment be, and hereby is, **DENIED** as moot.

---

is excluded from TILA coverage. *See*, *e.g.*, 12 C.F.R. § 226.20(a)(3) (stating that a refinancing that would ordinarily require "new disclosures to the consumer" does not apply to "[a]n agreement involving a court proceeding." *Id.*; *Barry v. EMC Mortg.*, 2011 WL 2669436, at *7 (D. Md. 2011).